Nos. 22-11014 & 22-11734

# In the United States Court of Appeals for the Eleventh Circuit

Tanethia Holden,
*Plaintiff-Appellant,*
v.
Holiday Inn Club Vacations Incorporated,
f/k/a Orange Lake Country Club, inc.,
*Defendant-Appellee,*
and
Mark S. Mayer,
*Plaintiff-Appellant,*
v.
Holiday Inn Club Vacations Incorporated,
f/k/a Orange Lake Country Club, inc.,
*Defendant-Appellee.*

On Appeal from the United States District Court for the Middle District of Florida
Case No. 6:19-cv-02373-CEM-EJK (Hon. Carlos E. Mendoza)
Case No. 6:20-cv-02283-GAP-EJK (Hon. Gregory A. Presnell)

## PLAINTIFFS-APPELLANTS' CONSOLIDATED OPENING BRIEF

Aaron M. Swift
Jordan T. Isringhaus
Jon Paul Dubbeld
Sean E. McEleney
Swift law PLLC
8380 Bay Pines Boulevard
St. Petersburg, FL 33709
(727) 490-9919

Michael D. Finn
J. Andrew Meyer
Finn Law Group, P.A.
8380 Bay Pines Boulevard
St. Petersburg, FL 33709
(855) 346-6529

Neil K. Sawhney
Gupta Wessler PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
neil@guptawessler.com

Matthew W.H. Wessler
Gupta Wessler PLLC
2001 K St NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

December 9, 2022                    *Counsel for Plaintiffs-Appellants*

Case Nos. 22-11014, 22-11734; Holden v. Holiday Inn, Mayer v. Holiday Inn

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26(b) and Eleventh Circuit Rule 26.1, Appellants hereby disclose the following list of known persons, associated persons, firms, partnerships or corporations that have a financial interest in the outcome of this case, including all subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party in this case:

Bitman, Ron J.

Dubbeld, Jon Paul

Finn, Michael D.

Holden, Tanethia

Holiday Inn Clubs Vacations Incorporated, f/k/a Orange Lake Country Club, Inc.

Isringhaus, Jordan

Jones, Bryan Scott

Marger, Ryan Christopher

Mayer, Mark S.

McEleney, Sean Edward

McGovern, Teris Anderson

Meyer, J. Andrew

Morat, Allison

O'Brien, Christopher

Case Nos. 22-11014, 22-11734; Holden v. Holiday Inn, Mayer v. Holiday Inn

Patterson, Pamela M.

Presnell, Gregory A.

Ruiz, Maria Helena

Sawhney, Neil K.

Swift, Aaron M.

Wessler, Matthew W.H.

Pursuant to 11th Cir. R. 26.1-3(b), Plaintiff is not aware of any publicly traded company or corporation that has an interest in the outcome of this case or appeal.

Dated: December 9, 2022                    */s/ Neil K. Sawhney*
                                           Neil K. Sawhney

## STATEMENT REGARDING ORAL ARGUMENT

The plaintiffs-appellants Tanethia Holden and Mark Mayer respectfully request an opportunity to present oral argument in this appeal. This case presents important questions concerning the proper interpretation of the Fair Credit Reporting Act's requirements. Oral argument will assist the Court in resolving these important legal issues.

# TABLE OF CONTENTS

Statement regarding oral argument ...........................................................................i

Introduction................................................................................................... 1

Jurisdictional statement ................................................................................. 2

Statement of the issues.................................................................................... 3

Statement of the case ..................................................................................... 3

Summary of argument.....................................................................................14

Standard of review.........................................................................................16

Argument......................................................................................................16

    I.     The Fair Credit Reporting Act does not categorically immunize furnishers, like Holiday Inn Club here, from liability for reporting inaccurate information whenever it relates to a "legal dispute.".....................................................16

          A.    The statute's plain text does not recognize a distinction between "factual" and "legal" inaccuracies. ............17

          B.    The FCRA's structure and purpose support the plaintiffs' textualist interpretation. .............................................19

          C.    The plaintiffs' interpretation is consistent with the FCRA's implementing regulations and the views of the agencies charged with administering and enforcing the statute.................................................................. 23

          D.    The atextual distinction between "factual" and "legal" inaccuracies invoked by the district court is based on shaky precedent and flawed policy justifications. ....................26

    II.    Because Holiday Inn Club furnished inaccurate information about the plaintiffs to Experian, the district court erred in granting summary judgment.............................................................. 29

Conclusion....................................................................................................31

# TABLE OF CITATIONS

## Cases

*Autauga County Emergency Management Communication District v. FCC*,
  17 F.4th 88 (11th Cir. 2021) ................................................................. 19

*Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.*,
  51 F.3d 235 (11th Cir. 1995) ................................................................. 19

*Bryant v. TRW, Inc.*,
  689 F.2d 72 (6th Cir. 1982) ..................................................................... 4

*Carvalho v. Equifax Information Services, LLC*,
  629 F. 3d 876 (9th Cir. 2010) ............................................................... 28

*Chiang v. Verizon New England Inc.*,
  595 F.3d 26 (1st Cir. 2010) ............................................................. 5, 27

*Cho on behalf of States v. Surgery Partners, Inc.*,
  30 F.4th 1035 (11th Cir. 2022) ............................................................. 17

*Dalton v. Capital Associated Industries, Inc.*,
  257 F.3d 409 (4th Cir. 2001) ............................................................... 4, 5

*DeAndrade v. Trans Union LLC*,
  523 F.3d 61 (1st Cir. 2008) .................................................................. 27

*Denan v. Trans Union LLC*,
  959 F.3d 290 (7th Cir. 2020) ............................................................... 28

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) .............................................................. 17

*Erickson v. First Advantage Background Services Corp.*,
  981 F.3d 1246 (11th Cir. 2020) ......................................................... 8, 18

*Felts v. Wells Fargo Bank, N.A.*,
  893 F.3d 1305 (11th Cir. 2018) ......................................... 5, 6, 7, 8, 29, 31

*Galper v. JP Morgan Chase Bank, N.A.*,
  802 F.3d 437 (2d Cir. 2015) ................................................................... 4

*Gross v. CitiMortgage, Inc.*,
    33 F.4th 1246 (9th Cir. 2022) .................................................................... 7, 28

*Guimond v. Trans Union Credit Information Co.*,
    45 F.3d 1329 (9th Cir. 1995) ............................................................................ 4

*Harper v. Better Business Services*, Inc.,
    961 F.2d 1561 (11th Cir. 1992) ...................................................................... 28

*Hinkle v. Midland Credit Management, Inc.*,
    827 F.3d 1295 (11th Cir. 2016) ........................................................... 7, 16, 31

*Hrebal v. Seterus, Inc.*,
    598 B.R. 252 (D. Minn. 2019) ....................................................................... 27

*Hunt v. JPMorgan Chase Bank, National Associationn*,
    770 F. App'x 452 (11th Cir. 2019) ........................................................... 6, 26

*In re Cumbess*,
    960 F.3d 1325 (11th Cir. 2020) ..................................................................... 21

*In re Guillen*,
    972 F.3d 1221 (11th Cir. 2020) ..................................................................... 17

*King v. Burwell*,
    576 U.S. 473 (2015) ...................................................................................... 19

*Kroner v. Commissioner of Internal Revenue*,
    48 F.4th 1272 (11th Cir. 2022) ..................................................................... 17

*Lamie v. U.S. Trustee*,
    540 U.S. 526 (2004) ..................................................................................... 20

*Losch v. Nationstar Mortgage LLC*,
    995 F.3d 937 (11th Cir. 2021) ....................................................................... 16

*Martin v. Social Security Administration, Commissioner*,
    903 F.3d 1154 (11th Cir. 2018) ..................................................................... 25

*Nelson v. Chase Manhattan Mortgage Corp.*,
    282 F.3d 1057 (9th Cir. 2002) ...................................................................... 29

*Norman v. Trans Union, LLC,*
   2020 WL 4735538 (E.D. Pa. Aug. 14, 2020) ............................................... 18

*Pereira v. Sessions,*
   138 S. Ct. 2105 (2018) .................................................................................. 22

*Safeco Insurance Co. of America v. Burr,*
   551 U.S. 47 (2007) .......................................................................................... 3

*Saunders v. Branch Banking & Trust Co. of Virginia,*
   526 F.3d 142 (4th Cir. 2008) ........................................................................ 28

*Seamans v. Temple University,*
   744 F.3d 853 (3d Cir. 2014) ............................................................................ 8

*SEC v. Levin,*
   849 F.3d 995 (11th Cir. 2017) ...................................................................... 24

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1944) ...................................................................................... 25

*Southern-Owners Insurance Co. v. Easdon Rhodes & Associates LLC,*
   872 F.3d 1161 (11th Cir. 2017) ..................................................................... 26

**Statutes**

15 U.S.C. § 1681 ........................................................................................... 2, 3, 22

15 U.S.C. § 1681b ............................................................................................... 21

15 U.S.C. § 1681e ............................................................................................... 21

15 U.S.C. § 1681i ............................................................................................. 6, 21

15 U.S.C. § 1681n ................................................................................................. 6

15 U.S.C. § 1681o ................................................................................................. 6

15 U.S.C. § 1681s-2 ...................................................................................... *passim*

28 U.S.C. § 1291 ................................................................................................... 2

28 U.S.C. § 1331 ................................................................................................... 2

Consumer Credit Reporting Reform Act of 1996,
Pub. L. No. 104–208, ch. 1, sec. 2413, § 623, 110 Stat. 3009 ..................................... 5

## Rules & Regulations

11th Cir. R. 36-2 ............................................................................................. 26

12 C.F.R. § 1022.41 ........................................................................... 5, 7, 8, 23

12 C.F.R. § 1022.43 ............................................................................... 24

## Other Authorities

115 Cong. Rec. 2411 (1969) ............................................................................ 4

116 Cong. Rec. 36570 (1970) ......................................................................... 4

Barbara Peterson,
*Trouble in Timeshare Paradise*, Consumer Reports (Dec. 19, 2019) ............................. 9

Christopher Elliott,
*Trapped in a timeshare? Here's how to escape*, USA Today (Dec. 26, 2018) .................... 9

Gretchen Morgenson,
*The Timeshare Hard Sell Comes Roaring Back*, N.Y. Times (Jan. 22, 2016) ................... 8

H.R. Rep. No. 102–692 (1992) ........................................................................ 22

S. Rep. No. 103–209 (1993) ...................................................................... 5, 27

S. Rep. No. 91–517 (1969) ......................................................................... 1, 4

## INTRODUCTION

Accurate credit reporting is critical to participation in the modern American economy. Jobs, housing, access to financial services—all can turn on the information contained in an individual's credit report. Precisely for this reason, Congress enacted the Fair Credit Reporting Act. The law includes a number of measures designed to protect consumers from the harms caused by the dissemination of inaccurate or incomplete credit information. One of these measures is section 1681s-2, which imposes duties on furnishers of consumer information—credit-card companies, banks, and other lenders and creditors—to ensure that the information they furnish to credit reporting agencies is not "inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A), (b)(1)(E).

This appeal asks this Court to determine what the statute means when it refers to "accuracy." *See id.* Because Congress did not define the term, it should be interpreted in line with its ordinary meaning—freedom from mistake or error. Section 1681s-2 thus requires furnishers to reasonably ensure that the information they report about consumers is free from mistake or error. This plain-text understanding is consistent with the statute's purpose "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969).

Yet the district court failed to apply the proper interpretation of section 1681s-2 here. Without analyzing the actual statutory text, the court held that the statute

implicitly draws a threshold distinction between two categories: "factual" inaccuracies and "legal" inaccuracies. An inaccuracy that falls in the former category, the court acknowledged, can serve as the basis for a consumer's section 1681s-2(b) claim. But, it concluded that a so-called "legal" inaccuracy—any dispute over consumer information that may involve "legal" or "contractual" questions—cannot. The district court therefore ruled that the plaintiffs were categorically barred, as a matter of law, from proceeding with their claims, because in its view their claims were based on a "legal" dispute over whether the plaintiffs continued to owe payments to Holiday Inn Club after they terminated their timeshare contracts.

This factual-vs.-legal framework cannot be squared with the statute's plain text, which makes no distinction between different forms of accuracy. And it frustrates the FCRA's core purposes by sharply limiting the types of inaccuracies that credit-reporting agencies must try to detect and prevent. This Court should reject the atextual "factual inaccuracy" threshold requirement applied by the district court, interpret the statute in line with its text, and reverse the summary-judgment orders.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331, because this case involves claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291. The district court in Tanethia Holden's case entered its order granting summary

judgment on February 28, 2022, Holden Dkt. 68, and Ms. Holden timely appealed on March 30, 2022, Holden Dkt. 72. The district court in Mark Mayer's case entered its order granting summary judgment on April 21, 2022, Mayer Dkt. 59, and Mr. Mayer timely appealed on May 20, 2022, Mayer Dkt. 61.[1]

## STATEMENT OF THE ISSUES

1. Did the district court err in interpreting the Fair Credit Reporting Act's requirement that furnishers report accurate and complete information about consumers to credit reporting agencies to categorically bar liability whenever the plaintiff's claim allegedly relates to a so-called "legal dispute"?

## STATEMENT OF THE CASE

### I.    Statutory and regulatory background

Congress enacted the Fair Credit Reporting Act in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).[2] As Congress recognized, "[t]he banking system"—and indeed, much else in our economy—"is dependent upon fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1).

---

[1] References to "Holder Dkt." are to the district court docket in case number 6:19-cv-02373, and references to "Mayer Dkt." are to the district court docket in case number 6:20-cv-02283. Page numbers refer to the page number that appears in the header generated by the district court's electronic filing system.

[2] Unless otherwise indicated, all internal citations, quotation marks, and alterations are omitted.

Yet, far too often, companies "were reporting inaccurate information that was adversely affecting" consumers. *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001). As one of the Act's sponsors observed at the time of its introduction, "[p]erhaps the most serious problem in the credit reporting industry is the problem of inaccurate or misleading information." 115 Cong. Rec. 2411 (1969). Another sponsor cautioned that, with the increasing computerization of personal data, "the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home." *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)).

As a result, and motivated by "concerns about the accuracy of information disseminated" by credit reporting agencies, *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015), Congress passed the Act "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report," S. Rep. No. 91-517, at 1. The FCRA was specifically "crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). To that end, the statute included "a variety

of measures designed to insure that agencies report accurate information." *Dalton*, 257 F.3d at 414–15.

In 1996, Congress amended the FCRA to make clear that so-called "furnishers"—companies that supply information about consumers to credit-reporting agencies—likewise have a duty to ensure that the information they report is accurate. *See* Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104–208, ch. 1, sec. 2413, § 623, 110 Stat. 3009 (codified as amended at 15 U.S.C. § 1681s-2); *see also, e.g.*, H.R. Rep. No. 108–396, at 1753–54 (2003) (Conf. Rep.); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) (describing amendments). These amendments sought "to close an identified 'gap in the FCRA's coverage,' whereby even dutiful investigations of consumer disputes by [credit reporting agencies] could be frustrated by furnishers' irresponsible verification of inaccurate information, without legal consequence to the furnishers." *Id.* (quoting S. Rep. No. 103–209, at 6 (1993)).

As amended, the FCRA imposes two distinct obligations on furnishers like Holiday Inn Club.[3] *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018). *First*, a furnisher is prohibited from "furnish[ing] any information relating to a

---

[3] There is no dispute that Holiday Inn Club is a "furnisher" under the FCRA, given that it "furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c).

consumer to any consumer reporting agency if [it] knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1). *Second*, furnishers "are required to take certain actions once notified by a [credit reporting agency] that a consumer disputes the accuracy or completeness of her furnished information." *Hunt v. JPMorgan Chase Bank*, *Nat'l Ass'n*, 770 F. App'x 452, 454 (11th Cir. 2019); *see* 15 U.S.C. § 1681s-2(b).[4] Specifically, the FCRA requires a furnisher to "(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency . . . ; [and] (C) report the results of the investigation to the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). If the investigation determines that the disputed information is inaccurate, incomplete, or unverifiable, the furnisher must "modify," "delete," or "permanently block the reporting of that item of information." *Id.* § 1681s-2(b)(1)(E). A consumer may sue a furnisher and recover damages if the furnisher willfully or negligently violates § 1681s-2(b)'s requirements. *See* 15 U.S.C. §§ 1681n, 1681o.

"The appropriate touchstone for evaluating a furnisher's investigation under § 1681s-2(b) is 'reasonableness.'" *Felts*, 893 F.3d at 1312. Although "what constitutes a

---

[4] Consumers generally dispute the accuracy of their credit reports directly with credit reporting agencies. The FCRA requires that the agencies notify furnishers of these disputes. *See* 15 U.S.C. § 1681i(a)(2).Consumers may also file disputes directly with furnishers, but the FCRA does not provide a private right of action for violations of the furnisher's obligation to investigate such direct disputes. *See* 15 U.S.C. § 1681s-2(a)(8) & (c)(1).

'reasonable investigation' will vary depending on the circumstances of the case," this Court has explained that "§ 1681s-2(b) requires some degree of careful inquiry by furnishers of information." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302–03 (11th Cir. 2016). "Whether a furnisher's investigation is reasonable will depend in part on the status of the furnisher—as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer—and on the quality of documentation available to the furnisher." *Id.* at 1302. The reasonableness of a furnisher's investigation is therefore a "a factual question" that should "normally be reserved for trial." *Id.* at 1303.

Like other courts, this Court has held that an FCRA plaintiff must make a threshold showing that the challenged credit information is inaccurate before proceeding with their claim against a furnisher. *See Felts*, 893 F.3d at 1313; *see also, e.g.*, *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("[T]o prevail on a FCRA claim against a furnisher, a consumer must make a prima facie showing that the furnisher's report was inaccurate."). Although the FCRA itself does not define "accuracy," the regulations implementing the statute's requirements for furnishers do. *See, e.g.*, 12 C.F.R. § 1022.41(a). Specifically, they provide:

> Accuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly:
>> (1) Reflects the terms of and liability for the account or other relationship;

(2) Reflects the consumer's performance and other conduct with respect to the account or other relationship; and

(3) Identifies the appropriate consumer.

*Id.* This Court has also recognized that "accuracy" under the FCRA means more than just "technical" accuracy. *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020). Rather, to be accurate, information must "be both technically accurate and not misleading." *Id.* In other words, "[i]f a report is so misleading that it is objectively likely to cause the intended user to take adverse action against its subject, it is not maximally accurate." *Id.* at 1252; *see also, e.g., Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014).

## II.    Factual background

Holiday Inn Club is a timeshare company. Its customers, like the plaintiffs here, pay for the right to use one or more of the company's vacation properties for a specified amount of time per year—typically one or two weeks. The buyer also agrees to pay homeowners' association dues covering maintenance and taxes on the property. Although some buyers pay upfront, many (including the plaintiffs here) finance their purchases through the company selling the units. *See* Gretchen Morgenson, *The Timeshare Hard Sell Comes Roaring Back*, N.Y. Times (Jan. 22, 2016), https://perma.cc/N35X-N33K?type=standard. Timeshare companies like Holiday Inn Club rely on "high-pressure sales practices," and customers who succumb to these practices are typically locked into the timeshare for life. *See id.* According to a

University of Central Florida study, the vast majority (up to 85%) of timeshare owners "regret their purchase." Christopher Elliott, *Trapped in a timeshare? Here's how to escape*, USA Today (Dec. 26, 2018), https://perma.cc/LAP8-QYBU; *see also* Barbara Peterson, *Trouble in Timeshare Paradise*, Consumer Reports (Dec. 19, 2019), https://perma.cc/KM9X-89Y6.

## A. Ms. Holden's case

Tanethia Holden entered into an agreement with Holiday Inn Club in June 2016 to purchase a timeshare in Las Vegas. Holden Dkt. 48-1. She paid approximately $2,000 as a down payment and financed the remaining $18,000 of the purchase. Holden Dkt. 48-1 at 3. The contract provided that the transaction would not be deemed closed until (1) Ms. Holden made the first three monthly installment payment; and (2) Holiday Inn Club recorded the deed in Ms. Holden's name. *Id.* at 5. The contract also included as paragraph 13 a section entitled "PURCHASER'S DEFAULT." *Id.* at 6. It provided, in relevant part, that "[u]pon Purchaser's default or breach of any term of this Agreement, all sums paid hereunder by Purchaser shall be retained by [Holiday Inn Club] as liquidated damages, not as penalty, and the parties hereto shall be relieved from all obligations hereunder." *Id.* The agreement also specifically noted that "[a]ny Note Payments made by Purchaser prior to closing shall be subject to the default provisions of paragraph 13." *Id.* at 5.

9

Although Ms. Holden made her first three monthly installment payments, Holiday Inn Club did not record the deed as required by the agreement. Holden Dkt. 48-2 at 3–4; Holden Dkt. 48-3 at 68. On March 9, 2017, Ms. Holden's counsel sent a letter to Holiday Inn Club advising the company that she "no longer intend[ed] to make further payments." Holden Dkt. 9-5 at 2. Two weeks later, Ms. Holden's counsel sent another letter stating that Ms. Holden considered the timeshare agreement cancelled, and again advising the company that she did not intend to make further payments. Holden Dkt. 9-6 at 2–3. Nevertheless, on June 19, 2017—nearly three months after Ms. Holden first notified Holiday Inn Club of her default—the company recorded the deed in her name. Holden Dkt. 9-7 at 3; Holden Dkt. 48-3 at 68. When asked why Holiday Inn Club recorded the deed in Ms. Holden's name after she defaulted under the contract, the company's corporate representative testified, "I'm not sure. I don't know." *Id.* at 68–69.

Eventually, Ms. Holden learned that Holiday Inn Club was inaccurately reporting that she continued to owe the debt under her timeshare agreement to Experian, a credit reporting agency. She sent a letter to both Holiday Inn Club and Experian in June 2018 disputing the reported debt and informing them that she had canceled the timeshare agreement. Holden Dkt. 9-14. Holiday Inn Club purportedly verified that the information it furnished to Experian was accurate, and Experian continued to report the debt on Ms. Holden's credit report. Holden Dkt. 48-3 at 82–

86. Ms. Holden disputed the reporting of the debt two more times with Experian, with the same results. Holden Dkt. 48-2 at 6; *see* Holden Dkts. 9-16, 9-17, 9-18. Experian thus continues to erroneously report that Ms. Holden owes over $25,000 to Holiday Inn Club, more than $4,000 of which is reportedly "past due." Holden Dkt. 48-2 at 5–6. This inaccurate reporting harmed Ms. Holden. In early 2019, for example, Ms. Holden's application for a mortgage was denied in part because of Holiday Inn Club's negative and derogatory reporting on her Experian credit report. Holden Dkt. 1 at 14.

After her repeated efforts to address these inaccuracies failed, Ms. Holden filed this FCRA action against Holiday Inn Club and Experian.[5] In particular, she alleged that Holiday Inn Club violated section 1681s-2(b) by inaccurately reporting that she continued to owe a debt to Holiday Inn Club and failing to reasonably investigate Ms. Holden's disputes about that alleged debt. Holden Dkt. 1 at 20–21. She also alleged that Experian violated sections 1681e(b) and 1681i(a)(1)—claims that the credit reporting agency and Ms. Holden eventually settled. *Id.* at 21–27; Holden Dkt. 35 & 36. The parties both moved for partial summary judgment on the only remaining claim under section 1681s-2(b). Holden Dkts. 46 & 48.

---

[5] Ms. Holden also alleged that Holiday Inn Club's collection attempts violated the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72. *See* Holden Dkt. 1 at 15–19. Those state-law claims are not at issue in this appeal.

The district court granted Holiday Inn Club's motion and denied Ms. Holden's. Agreeing with Holiday Inn Club, the district court held that section 1681s-2(b) only permits claims based on "factual inaccuracies." Holden Dkt. 68 at 6. By contrast, the court reasoned, inaccuracies relating to "contract" and "legal disputes" are simply not actionable under the FCRA. *Id.* at 6–8. Accordingly, the district court concluded that Ms. Holden's "FCRA claim must fail." *Id.* at 8. The court did not analyze the statute's text or structure, nor did it address any other aspect of Ms. Holden's section 1681s-2(b) claim, such as whether Holiday Inn Club's investigations of the dispute were reasonable.

### B. Mr. Mayer's case

Mark Mayer entered into a contract in September 2014 with Holiday Inn Club for a timeshare in Cape Canaveral, Florida. This contract's terms were similar to those in Ms. Holden's contract. As in Ms. Holden's contract, paragraph 13 of Mr. Mayer's contract provided that, upon his breach or default of any term of the agreement, Holiday Inn Club shall retain all payments as "liquidated damages" and the parties "shall be relieved from all obligations" under the contract. Mayer Dkt. 28-1 at 5. And the contract clarified that "[i]t is the express consent of the parties that the terms of this paragraph shall survive the closing of the Agreement." *Id.*

Mr. Mayer made his monthly installment payments between November 2014 and July 2017. Mayer Dkt. 48-1 at 4. He ceased making payments on the timeshare in

July 2017, which qualified as a default under paragraph 13—allowing Holiday Inn Club to retain the previous payments as liquidated damages and relieving Mr. Mayer from any obligations under the contract. *Id.* After Mr. Mayer's default, Holiday Inn Club did not attempt to collect further payments from him. Mayer Dkt. 28 at 8.

As with Ms. Holden, Holiday Inn Club continued to report Mr. Mayer's alleged debt to credit reporting agencies, including Experian, despite the fact that Mr. Mayer had terminated the contract. After reviewing his Experian credit report, Mr. Mayer sent multiple letters to Experian over two years explaining that the contract was terminated and disputing that he had a balance of more than $10,000 due to Holiday Inn Club, of which more than $4,000 was reportedly past due. Mayer Dkt. 48-1 at 5–6. In several of these letters, Mr. Mayer specifically requested that the account associated with the Holiday Inn Club timeshare be "marked as disputed." Mayer Dkt. 48-1 at 6. Experian communicated each dispute to Holiday Inn Club, who certified on each occasion that the information for Mayer's account was accurate. Mayer Dkt. 48-1 at 5–6. Neither Holiday Inn Club nor Experian took any action to modify or remove the information about Mr. Mayer's terminated timeshare account.

Concerned about the negative effects that Holiday Inn Club's reporting would have on his credit, Mr. Mayer filed this FCRA action. Like Ms. Holden, Mr. Mayer alleges a section 1681s-2(b) claim against Holiday Inn Club, and section 1681e(b) and

1681i(a) claims against Experian.[6] Mayer Dkt. 28 at 14–18 (operative complaint). Holiday Inn Club moved for partial summary judgment, which the district court granted solely on the ground that Mr. Mayer's FCRA claim "is based on a legal dispute that is not actionable under the FCRA." Mayer Dkt. 59 at 7.

## SUMMARY OF ARGUMENT

The Fair Credit Reporting Act imposes duties on furnishers of consumer information to ensure that the information they report to credit reporting agencies is accurate. Without any statutory analysis, the district court concluded that a consumer is barred from bringing a claim against a furnisher if the challenged information concerns a "legal dispute," as opposed to a "factual inaccuracy." Because the district court's interpretation of the FCRA conflicts with the statute's text, structure, and purposes, it must be reversed.

Statutory interpretation begins with the plain text. The term "accuracy" used in section 1681s-2 must be given its ordinary meaning: freedom from mistake or error. Thus, when information in a credit report is not free from mistake or error, it is inaccurate within the meaning of the statute. Nothing in the statutory text contemplates a distinction between "legal" inaccuracies and "factual" inaccuracies,

---

[6] Mr. Mayer's FCRA claims against Experian were settled and dismissed, and are not at issue on this appeal. Mayer Dkts. 42 & 43.

or between any other "categories" of inaccuracies. But the district court simply ignored the plain text—an error that, standing alone, warrants reversal.

The statute's structure and purpose confirm that the district court's interpretation was deeply flawed. Congress made clear in section 1681s-2 that furnishers have a broad duty to ensure that "any" dispute information is accurate—and Congress specifically included in the provision requirements relating to certain types of "legal" information. Yet, disregarding the language that Congress chose, the district court gave "accuracy" an extremely *narrow* reading—one that covers only "factual" accuracy. This reading subverts the FCRA's purpose: to protect consumers from the dissemination of inaccurate or incomplete information. Nor can it be squared with the implementing regulations, which make clear that furnishers' accuracy obligations extend to information concerning a consumer's "liability" and "performance"—that is, *legal* information. The federal agencies charged with enforcing the statute have thus agreed, including in litigation before this Court, that the statute does not distinguish between legal and factual inaccuracies.

Against all this, the district court rested its holding entirely on an unpublished decision by this Court—which itself relied on an outlier First Circuit decision that did not engage in any statutory analysis and invoked flawed policy justification cases. That thin reed of precedent cannot override the statute's plain text. This Court should therefore hold that section 1681s-2 applies to "legal disputes" and reverse.

## STANDARD OF REVIEW

"This Court reviews a district court's grant of summary judgment de novo, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1300 (11th Cir. 2016); *see also Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 942 n.3 (11th Cir. 2021).

## ARGUMENT

**I.    The Fair Credit Reporting Act does not categorically immunize furnishers, like Holiday Inn Club here, from liability for reporting inaccurate information whenever it relates to a "legal dispute."**

With little analysis, the district court in both cases concluded as a matter of law that the plaintiffs could not bring section 1681s-2(b) claims against Holiday Inn Club because their claims were based on so-called "legal disputes," not "factual inaccuracies." But this interpretation of the statute finds no support in the FCRA's text, structure, or purpose. To the contrary, the FCRA imposes a duty on furnishers to ensure that *all* information they report to credit reporting agencies is accurate and complete—whether characterized as "legal" or "factual." Indeed, the agencies charged with administering and enforcing the FCRA have expressly recognized that the statute makes no distinction between factual and legal disputes. The district court's contrary interpretation rests on outlier caselaw that failed to analyze the statutory text and invoked flawed policy considerations. It therefore must be reversed.

16

### A.   The statute's plain text does not recognize a distinction between "factual" and "legal" inaccuracies.

This Court must "begin [its] analysis, as always, with the statutory text." *Cho on behalf of States v. Surgery Partners, Inc.*, 30 F.4th 1035, 1040 (11th Cir. 2022); *see, e.g.*, *Kroner v. Comm'r of Internal Revenue*, 48 F.4th 1272, 1276 (11th Cir. 2022); *In re Guillen*, 972 F.3d 1221, 1226 (11th Cir. 2020).

The relevant text here is relatively straightforward. A furnisher may not "furnish *any* information relating to a consumer to any consumer reporting agency if [it] knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1) (emphasis added). And a furnisher that receives a "dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency" must investigate whether the "disputed information" is "incomplete or inaccurate" and take prescribed actions if so. 15 U.S.C. § 1681s-2(b). Nothing about this language suggests that certain types of inaccuracies are actionable, while others are not. Indeed, section 1681s-2(b) requires a furnisher to investigate the "accuracy" of "any information" about the individual that it furnished to a credit reporting agency—from the amount the individual owes on a certain debt, to the existence or validity of a debt, to whether the debt has been discharged or cancelled.

This understanding is confirmed by the "common and ordinary meaning" of the word "accuracy." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021). As

this Court has already held in the FCRA context, "accuracy" ordinarily means "freedom from mistake or error." *See Erickson*, 981 F.3d at 1251–52 (adopting this dictionary definition); *see also Norman v. Trans Union, LLC*, 2020 WL 4735538, at *7 (E.D. Pa. Aug. 14, 2020) (collecting definitions of "accuracy"). This plain and ordinary definition of "accuracy" contemplates no distinction between different forms of accuracy, whether labeled as "legal," "factual," or something else. In common, everyday English, it would be equally "inaccurate" to assert that someone is liable for a non-existent (or legally invalid) loan payment as it would be to misstate the amount of a person's loan—both assertions are not free from error. No ordinary person would understand the first to be "accurate" but the second to be "inaccurate."

To determine whether information reported about an individual is accurate, in other words, the only relevant question is whether the information was "free[] from mistake or error." And here, the information that Holiday Inn Club reported to Experian about Ms. Holden and Mr. Mayer was *not* free from mistake or error: The company erroneously reported that both plaintiffs owed thousands of dollars under timeshare agreements that both plaintiffs terminated in compliance with the terms of those agreements. Thus, both plaintiffs have demonstrated actionable "inaccuracies" to support their section 1681s-2(b) claims against Holiday Inn Club.

Violating the cardinal requirement of statutory interpretation, the district court ignored the statute's plain meaning. Indeed, in both cases, the district court

18

did not even try to ground the "factual inaccuracy" threshold requirement in the FCRA's text. That was error: "It is axiomatic that the interpretation of a statute *must* begin, and usually ends, with the text of the statute." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995) (emphasis added). Section 1681s-2 requires furnishers to reasonably ensure that the information they report to credit reporting agencies is not "inaccurate"—regardless of whether the inaccuracy is allegedly "legal" or "factual." That plain text should have been the end of the district court's analysis on the threshold question of whether Holiday Inn Club had an obligation under the FCRA to investigate the plaintiffs' disputes.

## B.    The FCRA's structure and purpose support the plaintiffs' textualist interpretation.

The other "traditional tools of statutory construction"—context, structure, and purposes—confirm that the district court erred in interpreting the FCRA's duties for furnishers to apply only to alleged "factual" inaccuracies. *Autauga Cnty. Emergency Mgmt. Commc'n Dist. v. FCC*, 17 F.4th 88, 98–99 (11th Cir. 2021); *see also King v. Burwell*, 576 U.S. 473, 474 (2015) (stating that courts "must read the words in their context and with a view to their place in the overall statutory scheme").

To start, the particular language that Congress used throughout section 1681s-2 reflects Congress's intent that furnishers have a broad duty to ensure the accuracy and completeness of *all* information they report about consumers. Once notified of "a dispute with regard to the completeness or accuracy of *any* information provided

by a person to a consumer reporting agency," a furnisher must "conduct an investigation with respect to *the disputed information*." 15 U.S.C. § 1681s-2(b)(1) (emphasis added). That Congress tasked furnishers with investigating "*any*" "disputed information"—not just certain subsets of information—demonstrates that a furnisher's obligations do not turn on whether the disputed information is characterized as "legal" or "factual." *See Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (noting that courts cannot "read an absent word into the statute"). The same is true with the furnisher's more general duty to provide accurate information to credit reporting agencies: "A person shall not furnish *any information* relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A).

Moreover, section 1681s-2 specifically requires furnishers to accurately report certain types of legal information. For example, the statute provides that it "shall not be considered inaccurate" when a furnisher does not report a consumer's "default regarding a private education loan" so long as the consumer has complied with a loan rehabilitation program. 15 U.S.C. § 1681s-2(a)(1)(E)(i). And the statute also mandates that furnishers report certain credit obligations or accounts as "current" for consumers who received "accommodation" during the Covid-19 pandemic. 15

U.S.C. § 1681s-2(a)(1)(F)(ii).[7] That section 1681s-2 actually requires furnishers to accurately report specific "legal" information is strong evidence that the statute's more general accuracy duties also apply to disputed "legal" information.

Other FCRA provisions similarly demonstrate that the district court's "factual inaccuracy" interpretation is implausible. *See In re Cumbess*, 960 F.3d 1325, 1333–34 (11th Cir. 2020) ("[C]ourts should consider the entire text of a statute, in view of its structure and of the physical and logical relation of its many parts, when interpreting any particular part of the text."). The statute imposes several accuracy-related duties on not only furnishers, but also credit reporting agencies. *See, e.g.*, 15 U.S.C. § 1681b(b)(3)(B)(i)(IV) (requiring CRAs to inform consumers about their right to "dispute with the consumer reporting agency the accuracy or completeness of any information in a report"); *id.* § 1681e(b) (requiring CRAs to follow reasonable procedures to assure "maximum possible accuracy"); *id.* § 1681i(a)(1)(A) (requiring CRAs to conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate"). And none of these varied provisions—for furnishers *or* credit reporting agencies—make any distinction between "factual" and "legal" accuracy. Instead, they merely require efforts to assure "accuracy" in general.

---

[7] "Accommodation" is defined as including "an agreement to defer 1 or more payments, make a partial payment, forbear any delinquent amounts, modify a loan or contract, or any other assistance or relief." 15 U.S.C. § 1681s-2(a)(1)(F)(i)(I).

Finally, the plaintiffs' textualist interpretation of section 1681s-2(b) also advances the statute's purposes. Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91–517, at 1; *see* 15 U.S.C. § 1681. And Congress specifically added section 1681s-2's furnisher requirements in 1996 "to ensure that information reported to consumer reporting agencies is accurate, that consumers are aware that such information is furnished to consumer reporting agencies, and that furnishers of information will respond in a responsible and timely manner to consumer disputes about the accuracy and completeness of information in their consumer reports." H.R. Rep. No. 102–692, at 38 (1992). None of these statutory purposes are served by categorically eliminating claims based on accuracies that turn on alleged "legal disputes"—after all, an inaccuracy about the nature or validity of a consumer's loan obligation can be equally (if not more) damaging than an inaccuracy about the amount of the obligation.

Bottom line: The FCRA does not immunize furnishers, like Holiday Inn Club here, from liability for reporting inaccurate information so long as it is not "factually" inaccurate. "[T]he plain text, the statutory context, and common sense all lead inescapably and unambiguously to that conclusion." *See Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018). Because the district court required the plaintiffs to make a threshold

22

"factual inaccuracy" showing that cannot be reconciled with the statute's text, structure, or purpose, the summary-judgment orders should be reversed.

### C. The plaintiffs' interpretation is consistent with the FCRA's implementing regulations and the views of the agencies charged with administering and enforcing the statute.

In addition to the traditional tools of statutory construction, the regulations implementing the FCRA's requirements also show that furnishers' accuracy-related statutory duties cover more than merely "factual" inaccuracies.

Section 1681s-2 tasks the Consumer Financial Protection Bureau, in consultation with other agencies, to prescribe certain regulations identifying how furnishers should investigate disputes concerning the accuracy of information. 15 U.S.C. § 1681s-2(a)(8)(A). These regulations specifically contemplate that furnishers must ensure the accuracy of *both* factual and legal information they furnish to credit reporting agencies.

For example, one regulation explains that "[a]ccuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly: (1) Reflects *the terms of and liability for the account* or other relationship; (2) Reflects t*he consumer's performance and other conduct with respect to the account* or other relationship; and (3) Identifies the appropriate consumer." 12 C.F.R. § 1022.41(a) (emphasis added). Another regulation is even clearer on this

point: "[A] furnisher must conduct a reasonable investigation of a direct dispute if it

relates to:

> (1) The consumer's *liability* for a credit account or other debt with the furnisher, such as direct disputes relating to whether there is or has been identity theft or fraud against the consumer, whether there is individual or joint liability on an account, or whether the consumer is an authorized use of a credit account;
>
> (2) The *terms of a credit account* or other debt with the furnisher, such as direct disputes relating to the type of account . . . ;
>
> (3) The *consumer's performance* or other conduct concerning an account or other relationship with the furnisher, such as direct disputes relating *to the current payment status*, high balance, date a payment was made, the amount of a payment made, or the date an account was opened or closed . . . .

12 C.F.R. § 1022.43(a). The regulations thus require a furnisher to accurately report

the "terms of a credit account" as well as the consumer's "liability" and

"performance"—all information that could be described as "legal" in nature.[8]

Given these regulations, it is not surprising that the CFPB has expressly

agreed—including in litigation before this Court—that the FCRA's requirements for

---

[8] Holiday Inn Club may argue that these regulations are inapplicable here because they impose requirements for "direct disputes" made by consumers to furnishers under subsection (a), rather than the "indirect" disputes made by consumers to credit reporting agencies under subsection (b). *See* 15 U.S.C. § 1681s-2(a)(8)(A). But the regulations interpret the exact same statutory language used in both subsections—"accuracy of information" and "inaccurate." *See SEC v. Levin*, 849 F.3d 995, 1003 (11th Cir. 2017) (noting that "identical words and phrases within the same statute should normally be given the same meaning").

furnishers do not distinguish between "legal" and "factual" inaccuracies. *See* CFPB Amicus Br. 13–25, *Milgram v. JPMorgan Chase Bank, N.A.*, No. 22-10250 (11th Cir. April 7, 2022); *see also, e.g.*, CFPB Amicus Br. 9–16, *Gross v. CitiMortgage, Inc.*, No. 20-17160 (9th Cir. April 19, 2021). In the CFPB's view, nothing in the FCRA "suggests that Congress intended to exclude disputes that implicate legal issues." CFPB *Milgram* Amicus Br. 16. "To the contrary, the accuracy and completeness of information in consumer files often turns on legal issues, such as whether a debt is valid and whom it obligates." *Id.* What's more, the CFPB explained, the factual-vs.-legal framework invoked by the district court "would be hard to implement and would undermine the purposes of the FCRA," because issues can often be "characterized as either factual or legal or both." *Id.* at 12, 22. In light of the agencies' "specialized experience" administering and enforcing the FCRA, their reasonable interpretation of section 1681s-2(b) merits "deference." *See Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154, 1159 (11th Cir. 2018) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944)).[9]

The district court's interpretation of the FCRA's furnisher requirements cannot be squared with the regulations and the federal agencies' own understanding of the statute. For this reason, too, the summary-judgment orders should be reversed.

---

[9] The CFPB and FTC have also determined that the FCRA's provisions for credit reporting agencies similarly make no distinction between "legal" and "factual" inaccuracy. *See* CPFB & FTC Amicus Br. 11–22, *Sessa v. Trans Union, LLC*, No. 22-87 (2d Cir. May 5, 2022).

**D. The atextual distinction between "factual" and "legal" inaccuracies invoked by the district court is based on shaky precedent and flawed policy justifications.**

As explained above, the district court in both cases here did not analyze the statute's text, structure, or purpose before granting summary judgment in favor of Holiday Inn Club. Instead, both decisions rested entirely on this Court's unpublished decision in *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452 (11th Cir. 2019), which they read to bar section 1681s-2(b) claims involving "disputed legal questions." *See* Holden Dkt. 68 at 6, 8; Mayer Dkt. 59 at 5–7.

As an initial matter, the brief discussion in *Hunt* about "factual inaccuracy" and "disputed legal questions" was dicta. That's because this Court first determined in *Hunt* that there was no inaccuracy at all—legal or factual. *See Hunt*, 770 F. App'x at 458 (rejecting "Hunt's argument that JPMC's filing of the Foreclosure Action relieved him of any obligation to make monthly payments on the mortgage"). To the extent *Hunt*'s recognition of the "factual" vs. "legal" distinction was not dicta, however, this Court should reject it. *See Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1165 n.4 (11th Cir. 2017) (observing that this Court is "not bound by unpublished decisions"); 11th Cir. R. 36-2 (providing that "[u]npublished opinions are not considered binding precedent").

In suggesting that section 1681s-2(b)'s requirements for furnishers are limited to "factual inaccuracies," *Hunt* did not undertake any analysis of the statute's text or

any other effort at statutory construction. Rather, the only support that *Hunt* identified for the distinction was an outlier First Circuit decision, *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26 (1st Cir. 2010), that "no other circuit court has followed . . . in the furnisher context." *Hrebal v. Seterus, Inc.*, 598 B.R. 252, 270 (D. Minn. 2019), *reconsideration granted on other grounds in Hrebal v. Nationstar Mortg. LLC*, 385 F. Supp. 3d 849 (D. Minn. 2019). For good reason: *Chiang* itself did not ground its invention of a "factual inaccuracy" threshold requirement in any statutory analysis. *See Chiang*, 595 F.3d at 38. Instead, it imported that requirement from a case involving *credit reporting agencies*' obligations under the FCRA. *See id.* (citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008)). "[J]ust as in suits against CRAs," *Chiang* reasoned, "a plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions." *Id.*

But *Chiang*'s equivalence between credit reporting agencies and furnishers cannot withstand scrutiny. Congress itself recognized when enacting section 1681s-2(b) that "it is creditors and other furnishers of information, not consumer reporting agencies, that have direct access to the facts of a given credit transaction." S. Rep. No. 103–209, at 6. Thus, "[o]rdinarily, the creditor is best situated to determine whether the information it reported was inaccurate or incomplete and to ensure its correction." *Id.* Other courts have similarly appreciated these differences between furnishers and credit reporting agencies. As the Fourth Circuit explained, "[c]laims

brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit, while claims against furnishers . . . do not raise this consideration because the furnisher *is* the creditor on the underlying debt." *Saunders v. Branch Banking & Tr. Co. of VA*, 526 F.3d 142, 150 (4th Cir. 2008); *see also, e.g.*, *Carvalho v. Equifax Info. Servs., LLC*, 629 F. 3d 876, 892 (9th Cir. 2010) (noting that "[a furnisher] stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation").

For this reason, courts have held—contrary to *Chiang*—that the "FCRA will sometimes require furnishers to investigate, and even to highlight or resolve, questions of legal significance." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022). As the Seventh Circuit put it, "it makes sense that furnishers shoulder this burden: they assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt." *Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020). Adopting an "ambiguous" "distinction between 'legal' and 'factual' issues," by contrast, would be "potentially unworkable, and could invite furnishers to evade their investigation obligation by construing the relevant dispute as a 'legal' one." *Gross*, 33 F.4th at 1253.

In the end, however, none of these policy considerations should bear on the Court's interpretation of section 1681s-2(b). Instead, the statute's "text must control." *Harper v. Better Bus. Servs.*, Inc., 961 F.2d 1561, 1563 (11th Cir. 1992). The FCRA "has been

drawn with extreme care, reflecting the tug of the competing interests of consumers, CRAs, furnishers of credit information, and users of credit information." *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). In considering these interests, Congress determined that furnishers have a duty to ensure that the information they furnish to credit reporting agencies should be accurate—without regard to whether that information relates to "factual" or "legal" issues. "It is not for a court to remake the balance struck by Congress." *See id.* Because that is precisely what the district court did in granting Holiday Inn Club's motions for summary judgment, this Court should reverse.

## II.    Because Holiday Inn Club furnished inaccurate information about the plaintiffs to Experian, the district court erred in granting summary judgment.

For all the reasons above, section 1681s-2(b) does not distinguish between "factual" and "legal" inaccuracies. Thus, the question before the district court on summary judgment should have been whether the plaintiffs demonstrated that Holiday Inn Club furnished inaccurate or incomplete information—whether characterized as "legal" or not—about their timeshare accounts to Experian. *See Felts*, 893 F.3d at 1313.

The answer to that question is yes. Here, Holiday Inn Club reported that both plaintiffs owed thousands of dollars to Experian on their timeshares, with much of that balance past due. Yet, in both cases, the plaintiffs no longer had *any* debt

outstanding to Holiday Inn Club—a fact that must be viewed in the light most favorable to the plaintiffs given the disputed issues present at summary judgment. This is especially clear for Ms. Holden: She informed Holiday Inn Club that she was defaulting on the agreement and refusing to make any further payments *before* the company recorded the deed on the timeshare—meaning that the transaction between Ms. Holden and Holiday Inn Club *never* closed, and she was never on the hook for additional payments. But the same is also true for Mr. Mayer. Although the deed was recorded in his case, the plain terms of the contract provided that, when he notified Holiday Inn Club of his default, the company retained all previous payments as "liquidated damages" and Mr. Mayer was "relieved from all obligations." Mayer Dkt. 28-1 at 5. And both plaintiffs repeatedly notified Holiday Inn Club (and Experian) in writing that they terminated their timeshare contracts pursuant to their terms and thus owed no additional payments to Holiday Inn Club.

Despite all this, Holiday Inn Club continued to inaccurately report to Experian that the plaintiffs owed significant debt on their timeshare accounts. That inaccurate reporting is sufficient for the plaintiffs to proceed with their FCRA claims against Holiday Inn Club. This would be the case even if, as Holiday Inn Club contended below, it would have been difficult for the company to fully resolve the plaintiffs' dispute. Indeed, the statute specifically contemplates this possibility: It commands a furnisher to modify, delete, or permanently block the reporting of

information if it is "inaccurate," "incomplete," or "cannot be *verified*." 15 U.S.C. § 1681s-2(b)(1)(E) (emphasis added). So here, because Holiday Inn Club admitted that it could not verify the information due to the alleged legal nature of the dispute, it should have taken the actions prescribed by the statute.

To be sure, that the plaintiffs have shown an inaccuracy for purposes of their section 1681s-2(b) claims does not mean that they will necessarily succeed on the merits of these claims. The plaintiffs must still demonstrate that Holiday Inn Club's investigation of their disputes was objectively unreasonable. *See Felts*, 893 F.3d at 1312. Because that is a "factual question" that "var[ies] depending on the circumstances of this case" and should "normally be reserved for trial," however, this Court should remand it to the district court to consider in the first instance. *See Hinkle*, 827 F.3d at 1302–03.

## CONCLUSION

The district court's orders granting summary judgment to Holiday Inn Club should be reversed.

Respectfully submitted,

*/s/ Neil K. Sawhney*
NEIL K. SAWHNEY
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
neil@guptawessler.com

MATTHEW W.H. WESSLER
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

AARON M. SWIFT
JORDAN T. ISRINGHAUS
JON PAUL DUBBELD
SEAN E. MCELENEY
SWIFT LAW PLLC
8380 Bay Pines Boulevard
St. Petersburg, FL 33709
(727) 490-9919

December 9, 2022                    *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,498 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this reply brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

/s/ Neil K. Sawhney
Neil K. Sawhney

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, I electronically filed the foregoing brief with the Clerk of the Court of the U.S. Court of Appeals for the Eleventh Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Neil K. Sawhney*
Neil K. Sawhney