No.: 22-11014 & 22-11734

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

TANETHIA HOLDEN,
*Plaintiff–Appellant*,
v.
HOLIDAY INN CLUB VACATIONS INCORPORATED,
F/K/A ORANGE LAKE COUNTRY CLUB, INC.,
*Defendant–Appellee*,

and

MARK S. MAYER
*Plaintiff-Appellant*,
v.
HOLIDAY INN CLUB VACATIONS INCORPORATED,
F/K/A ORANGE LAKE COUNTRY CLUB, INC.
*Defendant–Appellee*.

Consolidated Appeal from the United States District Court
for the Middle District of Florida

APPELLEE'S ANSWER BRIEF

ALLISON MORAT
BITMAN O'BRIEN & MORAT PLLC
615 Crescent Executive Ct., Suite 212
Lake Mary, Florida 32746
amorat@bitman-law.com
Telephone: (407) 815-3110
*Attorney for Appellee*
*Holiday Inn Club Vacations, Inc.*

**Certificate of Interested Persons and Corporate Disclosure Statement**

The Appellee, HOLIDAY INN CLUB VACATIONS INCORPORATED, F/K/A ORANGE LAKE COUNTRY CLUB, INC., by and through its undersigned counsel, hereby discloses the following:

1)     the name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action-including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to *any* party in the case:

Bitman O'Brien & Morat, PLLC

Bitman, Ron J.

Dubbeld, Jon P.

Finn, Michael D.

Holden, Tanethia

Holiday Inn Club Vacations Incorporated f/k/a/ Orange Lake County Club, Inc.

Isringhaus, Jordan T.

Jones, Bryan

Mayer, Mark S.

McEleney, Sean E.

Mendoza, Carlos E.

Meyer, J. Andrew

Morat, Allison

O'Brien, Christopher

Patterson, Pamela M.

Presnell, Gregory A.

Ruiz, Maria Helena

Sawhney, Neil K.

Swift, Aaron

Wessler, Matthew W.H.

Pursuant to 11th Cir. R. 26.1-3(b), Appellee is not aware of any publicly traded company or corporation that has an interest in the outcome of this case or appeal.

/s/ Allison Morat
Allison Morat

**Statement Regarding Oral Argument**

Appellee, HOLIDAY INN CLUB VACATIONS INCORPORATED, F/K/A ORANGE LAKE COUNTRY CLUB, INC., believes that this appeal may be properly decided on the briefs and without the benefit of oral argument. However, to the extent the Court permits oral arguments, it requests the opportunity to be heard.

## Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement .................. ii

Statement Regarding Oral Argument .................................................... iv

Table of Contents .................................................................. v

Table of Citations ................................................................ vii

Preliminary Statement ............................................................... 1

Statement of the Issues ............................................................. 1

Statement of the Case .............................................................. 2

    a.    Course of Proceedings and Statement of Facts ................................... 4

    b.    Disposition in the Middle District ......................................... 10

    c.    Scope of Review ......................................................... 11

Summary Of The Argument ........................................................... 13

Argument ......................................................................... 15

    I.    This Matter Involves Disputed Legal Questions; Disputed Legal Questions Do Not Give Rise to An Actionable Claim Under the FCRA ..................................................................... 15

        a.  The Fair Credit Reporting Act .......................................... 18

        b.  Holden and Mayer Do Not Possess an Actionable Claim Under the FCRA ............................................................... 21

II.     HICV Did Not Report Inaccurately; Holden and Mayer Did Not Terminate the Note Obligations; The Court May Affirm on this Additional Basis .................................................................................25

III.    The Court Should Reject the Consumer Financial Protection Bureau's and  Federal Trade Commission's Arguments...................................28

Conclusion ...................................................................................................31

Certificate Of Compliance  ........................................................................33

Certificate Of Service ...............................................................................34

## Table of Citations

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................11

*Baldeosingh v. TransUnion, LLC*,
No. 8:20-cv-925-WFJ-JSS, 2021 WL 1215001 (M.D. Fla. March 31, 2021) .......
........................................................................................................ 18, 24

*Batterman v. BR Carroll Glenridge*, *LLC*,
829 F. App'x 478 (11th Cir. 2020) .................................................. 15, 20, 21, 23

*Beal v. Paramount Pictures Corp.*,
20 F.3d 454 (11th Cir. 1994) ............................................................................12

*Cahlin v. General Motors Acceptance Corp.*,
936 F. 2d 1151 (11th Cir. 1991) .................................................................. 20, 30

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................12

*Chiang v. Verizon New Eng. Inc.*,
595 F.3d 26 (1st Cir. 2010) ...................................................... 15, 16, 21, 23, 29

*Davidson v. Capital One*, N.A.,
No. 14-20478-CIV, 2014 WL 6682532 (S.D. Fla. Nov. 25, 2014)....................25

*Evers v. Gen. Motors Corp.*,
770 F.2d 984 (11th Cir. 1985) ............................................................. 12, 25, 31

*Felts v. Wells Fargo Bank, N.A.*,
893 F.3d 1305 (11th Cir. 2018) ................................................. 11, 19, 20, 24, 26

*Gross v. CitiMortgage, Inc.*,
33 F.4th 1246 (9th Cir. 2022) ..................................................................... 29, 30

*Hinkle v. Midland Credit Mgmt., Inc.*,
827 F.3d 1295 (11th Cir. 2016) ........................................................................19

*Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*,
    770 F. App'x 452 (11th Cir. 2019) .............................................................. passim

*Jackson v. Bank of Am., N.A.*,
    No. 2:19-cv-01940-RDP, 2022 WL 1493849 (N.D. Ala. May 11, 2022)... 17, 23

*Kahalani v. Experian Info. Sols., Inc.*,
    No. 20-81018-CV, 2020 WL 13388260 (S.D. Fla. Dec. 29, 2020) ........... 17, 23

*Losch v. Nationstar Mortg. LLC*,
    995 F.3d 937 (11th Cir. 2021) ........................................................ 16, 29, 30, 31

*Mader v. Experian Info. Sols., Inc.*,
    56 F.4th 264 (2d Cir. 2023) .................................................... 16, 21, 22, 23, 29

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ..................................................................................... 18, 28

*Santessi v. Experian Info. Sols., Inc.*,
    No. 20-22689-CIV, 2020 WL 13401919 (S.D. Fla. Oct. 26, 2020)........... 17, 23

*Wilson v. SunTrust Bank, Inc.*,
    533 F. Supp. 3d 1363 (S.D. Ga. 2021) ............................................. 4, 17, 18, 23

**Statutes**

15 U.S.C. 1681s-2 ............................................................................................. passim

**Rules**

11th Circuit R. 28-1 ................................................................................................2, 3

Fed. R. App. P. 28(a) .............................................................................................2, 3

Fed. R. App. P. 32(a) ...............................................................................................33

## Preliminary Statement

In this brief, the Appellee, HOLIDAY INN CLUB VACACATIONS INCORPOATED, F/K/A ORANGE LAKE COUNTRY CLUB, INC. is referred to as "HICV." The Appellant, TANETHIA HOLDEN, is referred to as "Holden." The Appellant, MARK S. MAYER, is referred to as "Mayer."

References to "Holden Dkt." are to the district court docket in Case No. 6:19-cv-2373-CEM-EJK. References to "Mayer Dkt." are to the district court docket in Case No. 6:20-cv-2283-GAP-EJK. Page numbers refer to the page number that appears on the header of the docket entry as generated by the district court's electronic filing system.

## Statement of the Issues

1.     Did the district court correctly conclude that disputed legal questions are not actionable under the FCRA where the questions are within the purview of the court and have not been resolved by a court of law?

2.     Did the court possess an alternative basis to grant summary judgment where there was no inaccuracy in reporting and no reasonable investigation would have yielded a different result?

## Statement of the Case

Preliminarily, HICV notes that Holden's and Mayer's "Introduction" and Statement of the Case fails to comply with Fed. R. App. P. 28(a) and 11th Circuit R. 28-1(i). The contents of the brief do not follow the order dictated by the Rules, and instead the Appellants begin the brief with an "Introduction," wherein they factually represent, among other things, that they terminated their timeshare contracts. (Initial Brief, p. 2). It is improper for Holden and Mayer to represent to the Court, and as a foregone conclusion, that they terminated their contracts. There was no such ruling by the court below, and HICV categorically disagrees that Holden and Mayer terminated their payment obligations under the respective promissory notes.

Moreover, rather than Holden and Mayer beginning their Statement of the Case with a concise statement of the facts relative to this case and the procedural history, they instead attempt to paint an exaggerated picture of HICV as an unthinking machine that has reduced the Appellants' lives and character to blips and key-hole punches. (Initial Brief, p. 4). It would have been more accurate and concise for Holden and Mayer to inform the Court that it is undisputed that they each signed a promissory note, it is undisputed that they made at least three loan payments (Mayer made several years of payments), and it is undisputed that they defaulted. (Holden Dkt. 68, pp. 1-2; Mayer Dkt. 59, p. 1).

The Appellants' hyperbole expands throughout the Statement of the Case. In the first paragraph of their Factual Background, Holden and Mayer portray HICV as a nefarious actor that engages in high-pressure sale practices that lock purchasers into unwanted timeshares for life, but they fail to cite to the record to support this contention. (Initial Brief, pp. 8-9). In making statements like the foregoing, the Appellants improperly malign HICV's institutional reputation at the outset of the brief in an apparent effort to negatively sway the viewpoint of the Court. In this sense, the initial brief runs afoul of Fed. R. App. P. 28(a)(6). ((a) (Appellant's Brief. "The appellant's brief must contain, under appropriate headings and in the order indicated . . . . (6) a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (see Rule 28(e))"). And, it deviates drastically from 11th Cir. R. 28-1(i). ("In the statement of the case, as in all other sections of the brief, every assertion regarding matter in the record shall be supported by a reference to the record, as described in 11th Cir. R. 28-5 . . . A proper statement of facts reflects a high standard of professionalism. It must state the facts accurately, those favorable and those unfavorable to the party.").

For these reasons, HICV does not agree with or acquiesce to the Appellants' Statement of the Case. It provides its own Statement of the Case below.

### i.     Course of Proceedings and Statement of Facts

### a.     Holden Timeshare – A Financed Transaction

On June 25, 2016, Holden executed a purchase agreement for her purchase of timeshare property.  (Holden Dkt.  46, p. 2, ¶ 1) (citing Holden Dkt. 47, Mahecha Affidavit at ¶ 4; Ex. A).  On the same date, she obtained a loan to finance the purchase.  (Holden Dkt.  46, p. 2) (citing Holden Dkt. 47 at ¶ 5; Ex. B).

More specifically, on June 25, 2016, Holden executed and delivered a promissory note payable to Wilson Resort Finance, LLC in the amount of $17,857.00 (the "Note"). (Holden Dkt. 47 at ¶ 5; Ex. B). Per the terms of the Note, Holden was required to make payments in 120 monthly installments. (*Id*.). Holden also executed a mortgage. (*Id*. at ¶ 6; Ex.C).

Pursuant to the Purchase Agreement, the Note, Mortgage and the deed were held in escrow until Holden made the first three scheduled installment note payments. (*Id*. at ¶ 8; Ex. A, at ¶ 7(b)). The Purchase Agreement defines these first three loan payments as the "Note Payments." (*Id*.). Holden indisputably made the first three loan payments. (*Id*. at ¶ 10) (attesting, "HOLDEN timely made the first three payments due under the Note, thereby fulfilling her obligations under the Purchase Agreement in order to close on the sale.").

Upon making the third payment, all conditions for the release of the note from escrow had occurred. (*Id.* at ¶ 8; Ex. A at ¶ 7(b)). At that point, Holden still had 117 installment payments left to pay pursuant to the terms of the Note. (*Id.* at Ex. B). After making her third loan payment, Holden defaulted. (Holden Dkt. 47 at ¶ 13). There is no dispute that she stopped making payments. After Holden stopped making her loan payments, HICV reported the delinquency to Experian Information Systems, Inc. ("Experian"). (*Id.* at ¶ 15).

In the Statement of the Case, Holden describes her payment default as being relevant to her obligations under the Purchase Agreement instead of appropriately acknowledging anywhere in the brief that she signed a promissory note and mortgage obligating herself to 120 monthly payments. (Initial Brief, pp. 9-10).

In letters dated June 18, 2018, September 7, 2018, and November 9, 2018, Holden disputed the accuracy of the delinquent reporting as to the account. (Holden Dkt. 47 at ¶ 16; Ex. H). HICV investigated the disputes but determined that there was no factual inaccuracy with respect to the reporting. (*Id.* at ¶ 18).

On December 17, 2019, Holden filed her Complaint against HICV and Experian. (Holden Dkt. 1). Count IV of Holden's Complaint alleged that HICV violated 15 U.S.C. § 1681s-2(b) of the FCRA, allegedly because HICV should have removed any delinquent reporting of the account based upon Holden's claims that she did not owe the debt. (*Id.*).

To support her claim that no debt was owed, Holden raised two legal theories. First, she alleged that, based on the language of the Purchase Agreement, she unilaterally rescinded or otherwise stopped the closing of the transaction. Second, Holden alleged that paragraph 13 of the Purchase Agreement is triggered by virtue of her intentional default on the Note payments, thereby allowing Holden to abandon the contract with HICV's remedies limited to retention of the three Note Payments made by Holden. HICV disagrees.

On March 5, 2020, HICV filed its Answer and Affirmative Defenses to the Complaint. (Holden Dkt. 30). On July 23, 2021, HICV moved for summary judgment on Count IV. (Holden Dkt. 46). In support, it argued that there is no factual dispute that Holden stopped making payments. Instead, this matter involves a legal dispute, *i.e.*, Holden believes that she does not owe the debt pursuant to the Purchase Agreement, and HICV disagrees. HICV argued that an unresolved legal dispute over a contract cannot serve as grounds for a violation of § 1681s-2(b) of the FCRA. (*Id.* at p. 8).

### b.    Mayer Timeshare – A Financed Transaction

On September 15, 2014, Mayer executed a purchase agreement (the "Purchase Agreement") agreeing to purchase certain timeshare property as described therein (the "Property"). (Mayer Dkt. 34 at ¶ 4; Ex. A). On the same date, he obtained a loan to pay for the timeshare. (*Id.* at ¶ 5; Ex. B).

More specifically, on September 15, 2014, Mayer executed and delivered a promissory note (the "Note") payable to Wilson Resort Finance, LLC in the amount $10,108.00. (*Id*). Pursuant to the terms of the Note, to repay the loan, Mayer was required to make payments in 120 monthly installments, with the first payment due on November 14, 2014. (*Id*.). Because Mayer financed the purchase of the Property, paragraph 7(b) of the Purchase Agreement was triggered. Pursuant to paragraph 7(b), the parties agreed that the Note, Mortgage, and deed (the "Deed") would be held in escrow until Mayer made the first three scheduled note installment payments. (Mayer Dkt. 34 at ¶ 7; Ex. A at ¶ 7(b)). The Purchase Agreement defines these first three payments as the Note Payments." (*Id*.).

The third loan payment was due on January 14, 2015. (Mayer Dkt. 34 at Ex. B). Mayer timely made the first three Note Payments as defined by the Purchase agreement. (Mayer Dkt. 34 at ¶ 8, Ex. D). Upon timely making the first three loan payments (or the Note Payments), all conditions for the release of the Note, Mortgage, and Deed from escrow had occurred. (Mayer Dkt. 34 at ¶ 8; Ex. A at ¶ 7(b)). At that point, Mayer still had 117 installment payments left to pay under the Note. (Mayer Dkt. 34 at Ex. B).

On July 13, 2015, the deed to Mayer was recorded in Book 7407 at Page 1257 of the Official Records of Brevard County, Florida. (Mayer Dkt. 34 at ¶ 9; Ex. E). Meanwhile, Mayer continued to timely make each monthly installment payment due under the Note through May 2017. (*Id*. at  34 at ¶ 10; Ex. D).

Mayer defaulted under the Note by failing to make the payment due June 14, 2017, and all subsequent payments. (*Id*. at ¶ 11; Ex. D). Like Holden, Mayer inaccurately represents in his Statement of the Case that he defaulted under the terms of the Purchase Agreement. (Initial Brief, pp. 12-13) ("He ceased making payments on the timeshare in July 2017, which qualified as a default under paragraph 13 [of the Purchase Agreement]—allowing Holiday Inn Club to retain the previous payments as liquidated damages and relieving Mr. Mayer of any obligations under the contract."). It is objectively difficult to reconcile Mayer's representations in the Statement of the Case with his contractual obligation under the Note. Like Holden, Mayer completely overlooks the Note, and its attendant payment obligations, in his initial brief. (*Id*.).

Additionally, instead of forthrightly addressing the issues in dispute, Mayer represents that he terminated the contract. (Initial Brief, p. 13). HICV disagrees. The Purchase Agreement was not the operative contract for the monthly payments.

After Mayer stopped making payments under the Note (as opposed to the Purchase Agreement), HICV reported the payment delinquency on the Note to Experian Information Solutions, Inc. ("Experian"). (Mayer Dkt. 34 at ¶ 12).

In letters dated January 8, 2020, March 5, 2020, and April 23, 2020, Mayer disputed the accuracy of the delinquent reporting as to the account. (Mayer Dkt. 34 at ¶ 13; Ex. F). HICV investigated the disputes but determined there was no factual inaccuracy with respect to the reporting. (Mayer Dkt. 34 at ¶ 15).

On May 30, 2021, Mayer filed his Amended Complaint against HICV and Experian. (Mayer Dkt. 28). Count I of Mayer's Amended Complaint alleged that HICV violated 15 U.S.C. § 1681s-2(b) of the FCRA, allegedly because HICV should have removed any delinquent reporting of the account based on Mayer's claims that he did not owe the debt. (*Id*.). Mayer did not dispute that he stopped making payments. (*Id*. at ¶¶ 33-34).

To support his claim that the debt was no longer owed, Mayer alleged that the Purchase Agreement ended his debt obligation. He alleged that paragraph 13 of the Purchase Agreement was triggered by his payment default. By virtue of his decision to stop making payments, Mayer theorized that HICV's remedy was limited to the retention of Note Payments made by Mayer prior to the default. (*Id*.).

On June 18, 2021, HICV filed its answer and affirmative defenses. (Mayer Dkt. 33). On October 05, 2021, HICV filed its motion for summary judgment.

(Mayer Dkt. 35). It argued that there is no factual inaccuracy with respect to its reporting of Mayer's delinquency. (*Id*. at p. 5). It also argued that Mayer's legal position that he does not owe the debt is erroneous. (*Id*.). Mayer is contractually obligated under the Note and defaulted on that obligation by virtue of his failure to make the required payments. (*Id*.).

### ii.     Disposition in the Middle District

#### a.     Holden Disposition

On February 28, 2022, the Honorable Carlos E. Mendoza of the United States District Court for the Middle District of Florida entered an order granting HICV's motion for summary judgment. (Holden Dkt. 68). The court explained it its order that "a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, the result would have been different; i.e., that the furnisher would have discovered that the information it reported was inaccurate or incomplete . . . .") (*Id*. at p. 5-6).

The court further explained, "generally, unresolved contract disputes constitute legal disputes and not factual inaccuracies." (*Id*. at p. 6). However, "where a court has clearly resolved the legal dispute, reporting information inconsistent with the court's resolution can constitute a factual inaccuracy." (*Id*. at p. 7). Here, the court ruled that there has not been a final legal resolution on whether the debt is

10

owed; rather, it remains a disputed legal issue and Holden's FCRA claim must fail. (*Id*. at p. 8).

### b.    Mayer Disposition

On April 21, 2022, the Honorable Gregory A, Presnell of the United States District Court for the Middle District of Florida entered an order granting HICV's motion for summary judgment. (Mayer Dkt. 59). The court concluded that "Mayer's dispute over whether a liquidation clause in his contract excused him from his payment obligations is a legal contractual dispute, not a factual issue that would support a FCRA claim." (*Id*. at p. 5). The court found it notable that HICV "present[ed] a string of cases where courts have sided with its interpretation of the contract[.]" (*Id*.). It concluded that Mayer cannot establish a FCRA claim unless a court rules on the validity of his specific debt. (*Id*.).

### iii.    Scope of Review

This Court reviews "summary judgment rulings *de novo*, applying the same legal standards used by the district court." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018).

Summary judgment is proper where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Additionally, "the moving party is 'entitled to a judgment as a matter of law' [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether summary judgment is appropriate, the court is not required to "accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458–59 (11th Cir. 1994). "The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts." (Mayer Dkt. p. 3) (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

## Summary of the Argument

This appeal arises from two FCRA claims predicated upon unresolved legal questions. It is undisputed that Holden and Mayer stopped making their payments on the timeshare loan. After making at least three payments, they retained a lawyer and attempted to unilaterally terminate their payment obligations. HICV adamantly disagrees that the payment obligations were terminated via the consumers' written letters. These types of disputes are inherently legal, they are unresolved by a court of law, and they are not actionable under the Fair Credit Reporting Act. The Court should affirm because:

(I)    This matter involves disputed legal questions of contractual interpretation. Holden and Mayer failed to obtain a ruling from a court of law as to their debt obligations prior to prematurely bringing their FCRA claims.  This Circuit, and the courts therein, consistently hold within the framework of the FCRA that disputed legal questions do not give rise to an inaccuracy in credit reporting that is actionable under § 1681s-2(b).

(II)    HICV did not report inaccurately. Holden and Mayer did not effectively rescind their payment obligations. The operative agreement is the Note, not the Purchase Agreement. Their intentional default—after making three payments—did not relegate HICV to the liquidated damages clause in the Purchase Agreement. The Court may and should affirm on this additional basis.

13

(III) The Consumer Financial Protection Bureau and Federal Trade Commission's arguments should be rejected. The Court should not greenlight <u>all</u> claims arising from legal disputes. To hold otherwise is to unduly expand the scope and purpose of the FCRA. The courts' inquiry should continue to be case specific. This the governing law is not unworkable. The courts are plainly capable of weeding out factual inaccuracies, disputed legal issues that should be resolved by a court of law, and inaccuracies that are actionable because the law applied to the facts is already well-established.

**Argument**

## I.     This Matter Involves Disputed Legal Questions; Disputed Legal Questions Do Not Give Rise to An Actionable Claim Under the FCRA

This matter does not arise from an inaccuracy in credit reporting that is cognizable under the FCRA. It arises from disputed legal questions. More specifically, it involves two different consumers' allegations that they terminated their payment obligation related to a financed timeshare transaction. HICV disagrees that the respective notes and mortgages were terminated. These types of disputed legal questions do not give rise to an actionable FCRA claim.

To be sure, disputed legal questions such as this—*i.e.*, disputes that arise solely from consumer allegations as to contractual interpretation and which have not been resolved by a court of law—are not actionable under § 1681s-2(b). *See Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019) ("A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b).") (quoting *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)). *See also Batterman v. BR Carroll Glenridge*, *LLC*, 829 F. App'x 478, 481 (11th Cir. 2020) (plaintiff could not establish a § 1681s-2(b) violation where his claim was based on a contractual dispute as to whether the debt was owed).

15

In granting summary judgment, the district court judges followed the letter of the law. The rulings in these cases, by two different judges, are case specific and well-rooted in the statute and controlling case law. (Holden Dkt. 68 at p. 7; Mayer Dkt. 59 at p. 7). Notably, the appeal does not come to the Court as a categorical bar against <u>all</u> claims arising from legal inaccuracies in reporting. That is not the posture of the cases. (Holden Dkt. 68 at p. 7) (acknowledging, "where a court has clearly resolved the legal dispute, reporting information inconsistent with the court's resolution can constitute a factual inaccuracy."); (Mayer Dkt. at p. 7) ("Mayer cannot establish a FCRA claim under the reasoning outlined in *Losch* unless a court rules on the validity of his specific debt.").

Instead, the fatal flaw to the viability of Holden and Mayer's causes of action is that their claims of inaccuracy arise from unresolved disputes that are inherently legal in nature. Reasonable procedures do not require furnishers to resolve disputed legal questions that can only be resolved by a court of law; and here, Holden and Mayer wholly failed institute an action on the validity of their debt before prematurely proceeding with claims that are premised on inaccuracy. Their claims are not actionable under § 1681s-2(b). *See, e.g.*, *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) ("The "inaccuracy" Mader alleges does not meet this statutory test because it evades objective verification. There is no bankruptcy order explicitly discharging this debt."); *Chiang*, 595 F.3d at 38 ("Like CRAs,

furnishers are neither qualified nor obligated to resolve matters that turn[ ] on questions that can only be resolved by a court of law.") (internal quotation omitted).

Nevertheless, Holden and Mayer attempt to shoehorn their appeal into a generic mold whereby they argue that the district court neglected statutory language, relied on outlier law, and applied a categoric bar against FCRA claims that arise from legal issues. (Initial Brief, p. 16) ("With little analysis, the district court in both cases concluded as a matter of law that the plaintiffs could not bring [FCRA] claims against [HICV] because their claims were based on so-called 'legal disputes,' not 'factual inaccuracies' . . .'"). Given the language and reasoning of the court's orders, that is plainly not what happened. (*See*, *e.g.*, Holden Dkt. at pp. 6-8; Mayer Dkt. at pp. 5-7). The district court acknowledged distinctions and exceptions in case law, it was apt in its analysis, and its rulings are aligned with this Circuit.

Indeed, the courts within this Circuit uniformly hold that a furnisher's duty to investigate under the FCRA does not extend to issues that may only be resolved by a court of law. *Jackson v. Bank of Am., N.A.*, No. 2:19-cv-01940-RDP, 2022 WL 1493849, at *4 (N.D. Ala. May 11, 2022) ("In the FCRA context, a plaintiff must show a *factual* inaccuracy -- rather than the existence of a disputed legal question -- to prevail in a suit against a furnisher under § 1681s-2(b).")*; Kahalani v. Experian Info. Sols., Inc.*, No. 20-81018-CV, 2020 WL 13388260, at *3 (S.D. Fla. Dec. 29, 2020) (same); *Santessi v. Experian Info. Sols., Inc.*, No. 20-22689-CIV, 2020 WL

17

13401919, at *2–3 (S.D. Fla. Oct. 26, 2020) (same); *Wilson v. SunTrust Bank, Inc.*, 533 F. Supp. 3d 1363, 1369 (S.D. Ga. 2021) (furnishers are not obligated or qualified to resolve issues that can only be resolved by a court of law); *Baldeosingh v. TransUnion, LLC*, No. 8:20-cv-925-WFJ-JSS, 2021 WL 1215001, at *3 (M.D. Fla. March 31, 2021) ("A consumer fails to establish a factual inaccuracy . . . by merely asserting a challenge to the legal validity of a reported debt.").

For these reasons and as set forth *supra* herein, the Court should affirm the orders on appeal and reject Holden's and Mayer's request to impose an overbroad duty upon furnishers of credit to investigate <u>all</u> legal disputes, even those disputes that are borne solely from allegations from the consumers—and even though the FCRA imposes no such requirement. Their advocacy is far outside the law and unreasonable.

### a.     The Fair Credit Reporting Act

The purpose of the FCRA "is to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "Commercial needs for consumer credit information" are balanced with a "consumers' rights to 'confidentiality, accuracy, relevancy, and proper utilization' of their credit information." *Hunt*, 770 Fed. Appx. at 453.

Through amendments of the FCRA, Congress extended the Act to furnishers of consumer information. *Id*. A furnisher of credit is "an entity that supplies information to credit reporting agencies ("CRA")." (Holden Dkt. 68 at p. 5) (citing *Hunt*, 770 F. App'x at 453–54).

Under the FCRA, "[f]urnishers are prohibited from 'furnish[ing] any information relating to a consumer to any [CRA] if the [furnisher] knows or has reasonable cause to believe that the information is inaccurate.' § 1681s-2(a)(1)(A)." (Mayer Dkt. at p. 4). Notably, "[f]or purposes of subparagraph (A), the term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, **other than solely allegations by the consumer**, that would cause a reasonable person to have substantial doubts about the accuracy of the information." § 1681s-2(a)(1)(D). (emphasis added). To that end, objectively incorrect factual information is "inaccurate" under the FCRA. *Erickson v. First Advantage Background Services Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020).

Upon receipt of notice from a CRA of a consumer dispute, a furnisher must investigate the dispute, and verify, delete, or modify the information. *Felts*, 893 F.3d at 1312. Reasonableness is the touchstone of the investigation. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

19

To establish a prima facie violation of the FCRA, a consumer as plaintiff must present evidence that tends to show that a credit reporting agency prepared a report containing "inaccurate" information. *Batterman*, 829 Fed. Appx. at 481 (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F. 2d 1151, 1156 (11th Cir. 1991)). If the plaintiff fails to satisfy this initial burden, he/she "as a matter of law, has not established a violation" of the FCRA. *Id.*

Moreover, "a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; i.e., that the furnisher would have discovered that the information it reported was inaccurate or incomplete . . . ." *Felts*, 893 F.3d at 1313 (emphasis in original). *See also Hunt*, 770 Fed. Appx. at 457 (concluding that plaintiff failed "to state an FCRA claim because he cannot show that a reasonable investigation would have revealed that JPMC furnished inaccurate information to the CRAs."). This last crucial point was not lost on the district court. (Holden Dkt. at pp. 5-6) (citing *Felts*).

### b.    Holden and Mayer Do Not Possess an Actionable Claim Under the FCRA

Holden and Mayer do not possess an actionable claim under the FCRA. There is no dispute they stopped making payments. There is no dispute that they executed a promissory note that required them to make 120 monthly installment payments. There is no dispute that they made at least the first three monthly payments—and then stopped.

In pursuing their FCRA claims in the district court, Holden and Mayer argued that they rescinded the contract (after making several payments) and therefore the debt was not owed. HICV argued that the efforts to rescind were ineffective and the debt is still owed. (*See*, *e.g.*, Holden Dk. at p. 6). This is the disputed legal issue in a nutshell. And it is not actionable under the FCRA. *Chiang*, 595 F.3d at 38; *Hunt*, 770 F. App'x at 458; *Batterman*, 829 F. App'x at 481; *Mader*, 56 F.4th at 269. The Appellants' subjective interpretation of the timeshare contracts does not give rise to a legitimate consumer dispute of inaccurate reporting. *See*, *e.g.*, *Batterman*, 829 Fed. Appx. at 481 ("The report of the liquidated damages is not a factual inaccuracy; rather, it is a contractual dispute. Such contractual disputes require resolution by a court of law, not a credit reporting agency. Batterman's claims are not that the Appellees reported any factually incorrect information in his credit report, but rather, that they failed to accept his interpretation that he lawfully terminated the lease due to its uninhabitability.").

There has <u>not</u> been a final resolution on the validity of Holden and Mayer's debt by a court of law. Indeed, Holden and Mayer have not pursued a declaratory action on same. *See Mader*, 56 F.4th at 271 (explaining that if "the bankruptcy court specifically determined that Mader's loan was discharged, or if it were settled as a matter of law that Navient's Excel Grad loans like the one that Mader carries are dischargeable, and a credit reporting agency continued to report such a loan as due and owing, that would present a very different case in terms of cognizability under the FCRA."). Here, the existence of a legal conclusion as to the invalidity of the debt is a necessary condition precedent to the enforcement of a FCRA claim of this ilk.

Instead of Holden and Mayer establishing an inaccuracy in reporting (as was their burden), HICV presented the district court with examples of cases where Florida state courts have sided with its interpretation of the validity and enforceability of the note in foreclosure cases where similar arguments were raised. (Holden Dkt. at p. 8; Mayer Dkt. at p. 7) (citing *Holiday Inn Club Vacations, Inc. v. Granger*, 2018-CA-011778-O (Fla. 9th Cir. Mar. 15, 2021)). The Court should affirm without hesitancy given the circumstances of these cases.

Notably, Holden and Mayer omit reference to the promissory notes in their initial brief and effectively abandon any argument as to same. Their omission telling. There can be no credible dispute. The liquidated damages provision in the Purchase Agreement is irrelevant and does not override the Note obligations. *See* section II,

*infra*. <u>Regardless</u>, Holden's and Mayer's belief that a liquidation clause in the Purchase Agreement excused their payments under the Note is a legal contractual dispute—not a factual inaccuracy in reporting that would support a FCRA claim. *Chiang*, 595 F.3d at 38; *Hunt*, 770 F. App'x at 458; *Batterman*, 829 F. App'x at 481; *Mader*, 56 F.4th at 269.

Instead of addressing the contractual documents, Holden and Mayer spend an inordinate amount of time advancing the policy argument that legal disputes are not categorically exempt from reasonable investigation under the FCRA. However, the case law amongst the courts of the Circuit is uniform and constitutes a proper interpretation of the FCRA, especially given the reasonableness component coupled with the express statutory language that excludes allegations solely made by a consumer as reasonable grounds to doubt the accuracy of information. § 1681s-2(a)(1)(D) ("'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information."); *See also Chiang*, 595 F.3d at 38; *Hunt*, 770 F. App'x at 458; *Batterman*, 829 F. App'x at 481; *Mader*, 56 F.4th at 269; *Jackson*, No. 2:19-cv-01940-RDP, 2022 WL 1493849, at *4; *Kahalani*, No. 20-81018-CV, 2020 WL 13388260, at *3; *Santessi*, No. 20-22689-CIV, 2020 WL 13401919, at *2–3; *Wilson*,

533 F. Supp. 3d at 1369; *Baldeosingh*, No. 8:20-cv-925-WFJ-JSS, 2021 WL 1215001, at *3.

Holden and Mayer overlook another key issue with the insufficiency of their claims. They failed to and cannot demonstrate that a reasonable investigation (if it did not occur) would have yielded a different result, *i.e.*, that HICV would have discovered that the information it reported was inaccurate or incomplete. Instead, Holden and Mayer admit that they stopped making payments. Like *Hunt*, they "cannot demonstrate that a reasonable investigation would have uncovered an inaccuracy in that information." *Hunt*, 770 Fed. Appx. at 458 (citing *Felts*, 893 F.3d at 1313). There was no dispute of material fact before the district court and summary judgment was proper.

To avoid this insurmountable downfall in their litigation strategy, Holden and Mayer posit, as foregone conclusion, that they terminated their payment obligations. They contend that "the company erroneously reported that both plaintiffs owed thousands of dollars **under timeshare agreements that both plaintiffs terminated in compliance with those agreements**. Thus, both plaintiffs have demonstrated actionably 'inaccuracies'" under the FCRA. (Initial Brief, p. 18) (emphasis added). The foregoing representation by Holden and Mayer shines a spotlight on the flaw in their argument. The appeal is based on a false factual premise.

There has been <u>no</u> court ruling that Holden and Mayer terminated their payment obligations. (*See*, *e.g.*, Holden Dk. P. 8) (". . . whether Plaintiff owes the Debt remains a disputed legal issue."). And, Holden and Mayer may not seek reversal on the basis of rescission of the debt where it was not proven below. For these reasons, the Court should affirm.

## II. HICV Did Not Report Inaccurately; Holden and Mayer Did Not Terminate the Note Obligations; The Court May Affirm on this Additional Basis

HICV did not report inaccurately. A liquidated damages provision in the Purchase Agreement has no bearing on the validity of the Note. The operative agreement for the payment obligation is the Note, not the Purchase Agreement. *See Felts*, 893 F.3d at 1314 ("Wells Fargo was required to furnish information to the CRAs regarding Felts' payment status and history for one agreement in particular: the Note Felts signed for the Loan."). The Court may and should affirm on this additional basis. *Id.* at 1311 (court may affirm for any grounds in the record).

Indeed, "[r]egardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, the result would have been different; i.e., that the furnisher would have discovered that the information it reported was inaccurate or incomplete." *Id*. *See also* Hunt, 770 F. App'x at 458 (11th Cir. 2019)

25

(same, quoting *Felts*); *Davidson v. Capital One*, N.A., No. 14-20478-CIV, 2014 WL 6682532, at *4 (S.D. Fla. Nov. 25, 2014) ("But to interpret the FCRA to create liability for the failure to conduct a reasonable investigation when the disputed information is accurate would do violence to the primary goal of the FCRA: to promote the accurate reporting of credit information to CRAs.").

As HICV argued below, Holden and Mayer did not effectively rescind their payment obligations. (Holden Dkt. 46, p. 16) ("While [Holden] sent a notice to HICV purporting to rescind the contract, this notice was of no legal force because Holden had no legal right to rescind the transaction at that time."); (Mayer Dkt. 35, p. 16) ("Mayer may not use the Purchase Agreement as shield to avoid his payment obligations under the Note and Mortgage, or as a sword to seek monetary damages under the FCRA. He is wrong in his belief that Paragraph 13 of the Purchase Agreement served to eliminate all future payment obligations under the Note following his default in Note payments.").

To be sure, Holden and Mayer breached the respective Notes, not their obligation under the Purchase Agreement. (*See*, *e.g.*, Mayer Dkt 35, pp. 17-18). Paragraph 13 of the Purchase Agreement was not intended to create an escape hatch to the benefit of the Mayer or Holden, allowing them to unilaterally avoid their contractual obligations by defaulting under the Note; nor, did paragraph 13 actually create such a right. (Mayer Docket 34 at Ex. A, at ¶ 7(b)).

Paragraph 13 of the Purchase Agreement was clearly intended to protect HICV in the event that Mayer or Holden committed some breach of the purchase contract itself—not the Note or any other agreement—that would prevent the closing from occurring. As Note payments are not governed by the Purchase Agreement, non-payments under the Note do not prevent the closing and are not otherwise a breach of the Purchase Agreement.

Concluding that every note installment payment is a condition of the Purchase Agreement runs counter to the express language and purpose of the Purchase Agreement, and it would render meaningless the use of the capitalized term "Note Payments" in Paragraph 7(b) of the Purchase Agreement as a shorthand definition for the first three installment payments under the Note. If the contracting parties intended for additional note payments to be a term or condition of [the Purchase Agreement] subject to its liquidated damages provision, it makes little sense that the Purchase Agreement would, by its plain language, make only the first three payments a condition of closing under the Purchase Agreement, define those payments as the 'Note Payments' and make no reference to later installment payments being a term or condition of the Purchase Agreement, as distinguished from the Note and Mortgage. (*See* Mayer Dkt. 35 at pp. 19-20) (quoting analysis from *Granger* Court). (*See also* Holden Dkt. 46 at p. 22) (same).

27

**III.    The Court should reject the Consumer Financial Protection Bureau's and Federal Trade Commission's Arguments**

The Consumer Financial Protection Bureau and Federal Trade Commission filed an amicus brief in this appeal. It appears, however, that they misunderstand the district court's ruling. They contend in their brief that "the district courts decisions at issue unduly narrow the scope of a furnisher's obligations by holding that furnishers need not investigate indirect disputes involving 'legal' inaccuracies." (Initial Brief, p. 2). Their choice of terminology in "legal inaccuracies" is important. This appeal does not come to the Court from cases involving "legal inaccuracies." Holden and Mayer's claims arise from disputed legal questions that may only be resolved by a court of law.

Still, the CFPB and FTC raise the concern that the district court's holdings will limit consumer's ability to obtain correction of potentially harmful inaccuracies on their consumer reports and reduce the incentive to resolve 'legal disputes." (Initial Brief, p. 2). They overlook, however, the outcome for which they advocate will disincentivize consumers to honor their debts, it will hamper the efficient extension of credit and disserve consumers, and it will inequitably eviscerate the intended balance of the FCRA. *Safeco Ins. Burr*, 551 U.S. at 52. *Hunt*, 770 Fed. Appx. at 453. Given the undisputed payment default by Holden and Mayer (which rests on a flawed legal interpretation), HICV's credit reporting serves a proper purpose and promotes efficiency in banking.

28

Noticeably, the CFPB and the FTC, with their choice of qualified language, appear to recognize in their amicus brief that Holden's and Mayer's attempted rescission is still a disputed legal issue that may not have been effective. (*See*, *e.g.*, Amicus Brief, at p. 7) ("In 2019, Mr. Mayer mailed HICV letters that disputed the validity of, and **purported** to rescind, the agreement . . . .") (emphasis added). And, they recognize that reasonable procedures govern the determination of accuracy. (*Id.* at p. 14) ("What constitutes a 'reasonable' investigation is case specific, and the investigation must be 'reasonable' under the circumstances.").

In raising the foregoing points, however, the CFPB and FTC fail to recognize that the existing law does not preclude cases predicated on objective verifiable inaccuracies. *See, e.g.*, *Chiang,* 595 at 29–30 (1st Cir. 2010) (We further hold that a § 1681s–2(b) claim requires plaintiff to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover."); *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 946 (11th Cir. 2021) ("[T]here is no doubt that Losch's mortgage was discharged. Thus, this case doesn't involve a legal dispute about the validity of the underlying."); *Mader*, 56 F.4th at 271(explaining in the event of bankruptcy discharge "or if it were settled as a matter of law that Navient's Excel Grad loans like the one that Mader carries are dischargeable, and a credit reporting agency continued to report such a loan as due and owing, that would present a very different case in terms of cognizability under the FCRA."); *Gross v.*

29

*CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (ant-deficiency law barred liability for debt).

Thus, the governing law is not unworkable. The courts are plainly capable of weeding out factual inaccuracies, disputed legal issues that should be resolved by a court of law, and inaccuracies that are actionable because the law applied to the facts is already well-established. This appeal serves as a prime example of that. Holden's and Mayer's complained of inaccuracies are nothing more that consumer allegations arising from their mistaken interpretation of contractual documents. This is not the same case as a debt barred by an anti-deficiency law, or a bankruptcy discharge. The facts are materially different than *Gross* or *Losch.*

In sum, the Court should not upend the existing law. The law necessarily draws a distinction between factual inaccuracies, objectively verifiable legal inaccuracies, and unresolved legal disputes that may only be resolved by a court of law. The relevant inquiry in FCRA cases should continue to be case specific. The standard is not unworkable or difficult. The Court should decline to expand the FCRA in a way that will be unduly advantageous to a subset of consumers that admittedly stop paying their debts, to the disadvantage of consumers in the long run, and to the obvious detriment of creditors and furnishers of credit information. *Cahlin*, 936 F.2d at 1158 ("[T]he very economic purpose for credit reporting

companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer.").

And again, the district court rulings at issue here do not serve as a categoric bar to all FCRA claims predicated on legal inaccuracies in reporting. (*See*, *e.g.*, Holden Dkt. at p. 8) (explaining " . . . there has not been the kind of final resolution referenced in *Losch*, and whether Plaintiff owes the Debt remains a disputed legal issue."). The district court properly evaluated the circumstances of the individual cases and correctly ruled Holden and Mayer's FCRA claims fail. HICV is entitled to judgment as a matter of law.

## Conclusion

Disputed and undecided legal questions that are within the purview of a court of law do not give rise to inaccuracies in credit reporting. Summary judgment in these cases was proper. In seeking reversal, Holden, Mayer, and their amici espouse an inequitable, unworkable, and damaging standard that asks the Court to unduly expand the scope of the FCRA outside its ordinary meaning and to greenlight all consumer claims even if they are based on subjective and unproven allegations. This is not the law. The Court should affirm.

RESPECTFULLY submitted on this day, February 8, 2023.

<div style="margin-left: 40%">

BITMAN, O'BRIEN & MORAT, PLLC

/s/ Allison Morat
Allison Morat, Esquire
Florida Bar No.: 99453
amorat@bitman-law.com
krahberg@bitman-law.com
615 Crescent Executive Ct., Suite 212
Lake Mary, FL 32746
Telephone: (407) 815-3110
*Counsel for Appellee*

</div>

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,002 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman, 14 Point font.

By: /s/ Allison Morat

Allison Morat

**Certificate of Service**

I HEREBY CERTIFY that, on February 8, 2023, I electronically filed the foregoing Answer Brief with the Clerk of Court of the United States Court of Appeals for the Eleventh Circuit using CM/ECF. All parties and counsel of record will be served via transmission Notices of Electronic Filing generated by CM/ECF.

BITMAN, O'BRIEN & MORAT, PLLC

/s/ Allison Morat
Allison Morat, Esquire
Florida Bar No.: 99453
amorat@bitman-law.com
krahberg@bitman-law.com
615 Crescent Executive Ct., Suite 212
Lake Mary, FL 32746
Telephone: (407) 815-3110
*Counsel for Appellee*

34